## AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

Your affiant, Enrique J. Diaz Velit, being duly sworn, deposes and states as follows:

1. I have been employed as a special agent by the Drug Enforcement Administration ("DEA") since June 2023, and I am currently assigned to the Norfolk District Office High Intensity Drug Trafficking ("HIDTA") Task Force. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. While with DEA, I have received training on drug offenses and personally participated in numerous investigations into the unlawful importation and distribution of controlled substances, including 16 weeks of specialized drug-related training at the DEA academy in Quantico, Virginia. The training included controlled substance identification, drug-related investigative techniques, interview and interrogation training, preparation of search warrants, tactical applications of drug enforcement, surveillance and electronic monitoring techniques. During my employment with DEA, I have personally participated in all aspects of narcotics distribution and trafficking investigations, including conducting surveillance, debriefing and utilizing confidential sources, acting in an undercover capacity and conducting court-authorized interceptions of electronic communications. I have personally participated in investigations of individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine, fentanyl, and other controlled substances as defined in 21 U.S.C. § 801.

2. Prior to my current position, I was employed as a deputy sheriff for the Guilford County (NC) Sheriff's Office from 2017-2023. During my tenure, I participated in training detailing the intricacies of drug investigations, involving the possession and sale of illegal drugs and drug paraphernalia. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations ("DTOs") to purchase, transport, store, and distribute illegal drugs and to hide profits generated from those transactions.

3. Your affiant is currently participating in an investigation into the distribution, and possession with intent to distribute, of heroin in the Hampton Roads area of the Eastern District of Virginia. During the investigation, it has been determined that **William Lee RIDDICK Jr.** is involved in the possession of heroin with intent to distribute in violation of federal law.

## CRIMINAL OFFENSE

4. Section 841(a)(1) of Title 21 of the United States Code, provides, in part, that, "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Heroin is a Schedule I controlled substance.

5. Your affiant makes this affidavit in support of an application for an arrest warrant for **William Lee RIDDICK Jr. a/k/a "Pete"** (hereinafter "**WILLIAM RIDDICK**" and/or "**RIDDICK**") in relation to the following offense occurring in the Eastern District of Virginia ("EDVA"):

a. Possession with intent to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin; a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(i).

**ESSENTIAL FACTS CONSTITUTING THE OFFENSES CHARGED**

6. Since this affidavit is being submitted for the limited purpose of securing authorization for an arrest warrant, your affiant has not included each and every fact known to the investigative team concerning this investigation. Rather, your affiant has set forth only those facts believed to be necessary to establish probable cause that **WILLIAM RIDDICK** committed the listed offense. Facts not set forth herein are not being relied upon in reaching the conclusion that an arrest warrant should be issued. Nor is it requested that the Court rely upon any facts not set forth herein in reviewing this affidavit.

7. Your affiant has personally participated in the investigation of the offense described in this affidavit. As a result of your affiant's participation in this investigation and a review of reports made to your affiant by other members of the investigative team, your affiant is familiar with the circumstances of this investigation. On the basis of this familiarity, and on the basis of the other information which I have reviewed and determined to be reliable, your affiant alleges the following.

8. On or about May 2025, members of the investigative team identified **William Lee RIDDICK** as being involved in the distribution of heroin and cocaine in the Hampton roads area of the Eastern District of Virginia. Records indicate that **RIDDICK** is a 3-time convicted felon with prior convictions for sell/provide for resale a schedule I or II substance.

9. **RIDDICK** was previously convicted of possession with intent to distribute a mixture containing cocaine base and felon in possession of a firearm in U.S. District Court Norfolk Division. At the time of these offenses RIDDICK was on federal supervised release related to those charges.

10. On or about May 2026, members of the investigative team cultivated two (2) *confidential human sources (hereinafter referred to as CS – 1 and CS – 2).* Subsequently, members of the investigative team interviewed CS-1 and CS-2, who agreed to cooperate with law enforcement and provided information regarding their source of supply (SOS) for Schedule I/II narcotics in the Hampton Roads region of the Eastern District of Virginia (EDVA). CS – 1 advised purchasing Schedule I/II narcotics from both "Pooch" and "Pete", primarily from "Pete", for several months. CS-1 and CS-2 identified "Pooch" as C.E. and "Pete" as **RIDDICK** via photo. CS-1 and CS-2 provided a telephone number to communicate with **RIDDICK** to purchase Schedule I/II narcotics. CS-1 has personal knowledge of C.E. and **RIDDICK** storing large amounts of Schedule I/II up to multi-kilogram weights. CS-1 and CS-2 identified several vehicles **RIDDICK** is known to operate, including, but not limited to, a black Acura SUV and a black Mercedes.

11. On or about May 2026, the Chesapeake Police Department used two confidential sources (CS), hereinafter referred to as CS-1 and CS-2, to conduct a controlled purchase from **RIDDICK.** Prior to the operation, CS-2 contacted **RIDDICK** who agreed to sell $60 worth of crack cocaine and heroin to CS-2. Under the direction and control of the investigative team, the CS-1 and CS-2 met with

**RIDDICK** in Norfolk, VA and completed the controlled purchase of heroin and crack cocaine. Members of the investigative team observed CS-2 and **RIDDICK** enter a black Acura. Physical and electronic surveillance were maintained on CS-1 and CS-2 during the operation. Immediately following the operation, CS-2 turned over approximately .9 grams of heroin and .3 grams of crack cocaine to the investigative team. CS–2 later advised seeing additional quantities of crack cocaine and fentanyl within the black Acura. After the controlled purchase members of the investigative team observed **RIDDICK** operate the black Acura.

12. The substances that the CS received from **RIDDICK** field tested positive for crack cocaine and inconclusive for heroin. The substances were also submitted to the DEA Mid-Atlantic lab; laboratory results are pending.

13. Members of the investigative team identified that the black Acura had been parked on the 600 block of Waukesha Avenue in the City of Norfolk utilizing a law enforcement database.

14. On or about May 13, 2026, at approximately 0830 hours, members of the investigative team located the black Acura parked in the driveway of an address on Waukesha Ave, Norfolk, VA 23509 (hereinafter "the Waukesha Avenue address). At approximately 0950 hours, members of the investigative team observed a black female exit the Waukesha Avenue address before entering a silver Mercedes. At approximately 1202 hours, members of the investigative team observed **RIDDICK** exit the Waukesha Avenue address and go inside the driver's door before returning to the residence. Approximately 30 minutes later, **RIDDICK** exited the Waukesha Avenue address with a large backpack and a plastic bag in his hand. Furthermore, **RIDDICK** utilized a key to lock the front door before entering the black Acura and leaving the area. Members of the investigative team placed surveillance at the Waukesha Avenue address and observed the black Acura parked in the driveway overnight.

15. On or about May 21, 2026, at approximately 8:16 a.m., Chesapeake Police Department executed a search warrant at the **Waukesha Avenue address**. Inside the residence were two occupants; **RIDDICK** and another female known as D.J. A search of the residence yielded 3 vacuum sealed kilograms of suspected heroin found inside a blue duffel bag that was inside the master bedroom. A prescription bottle with **RIDDICK**'s name was also located in the same bedroom.

16. The suspected heroin was submitted to the DEA Mid-Atlantic lab where it was confirmed to be a mixture and substance of 3005.9 +/- 0.5 grams of a mixture and substance containing heroin and fentanyl.

17. Based upon my training and experience, I know this amount of heroin to be consistent with illegal narcotics trafficking and not consistent with mere personal use.

18. In the living/dining room investigators located a Springfield XDM .40 caliber handgun inside a black backpack. Inside the black backpack, investigators also located a prescription bottle with C.E.'s name on it as well as **RIDDICK**'s vehicle insurance card. In the living/dining room Investigators also located a wallet with **RIDDICK's** driver's license in it.

19. Members of the investigative team interviewed D.J. According to D.J. **RIDDICK** had resided at the Waukesha Avenue address since December. D.J. also stated that she had not seen **RIDDICK** with drugs in the residence previously.

20. Members of the investigative team spoke with **RIDDICK's** Federal Probation Officer, who advised that as of April 2026 **RIDDICK** reported his address as an address on Mapleton Avenue in Norfolk, Virginia.

21. Members of the investigative team interviewed **RIDDICK**'s family member, and the family member advised that **RIDDICK** regularly stayed with his girlfriend and did not reside at the Mapleton Avenue address anymore. **RIDDICK**'s address on Virginia DMV records lists his primary residence as the Mapleton Avenue address.

22. Norfolk, Virginia is located within the Eastern District of Virginia.

## CONCLUSION

23. Based on the information and evidence, set forth above, I respectfully submit there is probable cause to believe that on or about May 21, 2026, within the Eastern District of Virginia, the defendant, **WILLIAM RIDDICK JR. a/k/a "Pete"**, knowingly and intentionally possessed with intent to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(A)(i).

EDiaz
_______________________________
Enrique J. Diaz Velit, Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me
On this 15th day of September 2026

_______________________________
United States Magistrate Judge
Norfolk, Virginia